IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DOUGLAS A. JONES and | : | CIVIL ACTION |
| ANDREA M. JONES, | : | |
| | : | |
| Plaintiffs, | : | NO. 07-4328 |
| | : | |
| v. | : | |
| | : | |
| ABN AMRO MORTGAGE GROUP, INC., | : | |
| et al. | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**

Giles, J.                                                                                                            April 10, 2008

**I.      Introduction and Procedural History**

Plaintiffs Douglas A. and Andrea M. Jones filed their initial class action complaint in the Berks County Court of Common Pleas on September 25, 2007, naming twenty-four (24) companies plus "John Doe Mortgage Companies" as defendants.[1]  Defendant Countrywide Home Loans, Inc. ("Countrywide") removed the lawsuit to this court on October 16, 2007.  Plaintiffs

---

[1] The named defendants in Plaintiffs' initial complaint were ABN AMRO Mortgage Group, Inc. ("ABN AMRO"); Chase Home Mortgage Corporation ("Chase"); Citimortgage, Inc. ("Citimortgage"); Citicorp Home Mortgage Services, Inc. ("Citicorp"); Countrywide Home Loans, Inc. ("Countrywide"); Fifth Third Mortgage Company ("Fifth Third"); Florida Capital Bank Mortgages ("Florida Capital"); GMAC Mortgage Corporation; GMAC Mortgage Asset Management, Inc.; GMAC Mortgage Group, Inc.; HSBC Mortgage Corporation (USA) ("HSBC"); Indymac Financial Services Corporation ("Indymac"); Moorequity, Inc. ("Moorequity"); National City Mortgage, Inc. ("National City"); nBank, N.A.; Provident Funding Group, Inc. ("Provident"); Saxon Home Mortgage; Saxon Mortgage, Inc.; Sovereign Bank; SunTrust Mortgage, Inc. ("SunTrust"); U.S. Bank, N.A.; Wachovia Mortgage Corporation ("Wachovia"); Washington Mutual Home Loans, Inc. ("Washington Mutual"); Wells Fargo Home Mortgage, Inc. ("Wells Fargo"); and John Doe Mortgage Companies.

filed their First Amended Complaint on November 9, 2007, and their Second Amended Complaint on November 20, 2007.[2]

Plaintiffs' Second Amended Complaint ("Complaint") named over two dozen plaintiffs and amended the list of defendants.[3] In that Complaint, Plaintiffs allege that several Pennsylvania companies, owned or controlled by Wesley Snyder ("the Snyder Entities"), were the servicing agents and loan originators for each defendant. Plaintiffs allege that the Snyder Entities offered them "Equity Slide Down Mortgages" as part of what Plaintiffs allege was a mortgage servicing Ponzi scheme. Plaintiffs allege that Defendants failed to monitor and supervise the Snyder Entities, which did not credit Plaintiffs properly for payments and pre-payments of interest and principal on their mortgages. Plaintiffs further allege that, following the bankruptcy of the Snyder Entities, Defendants failed to notify Plaintiffs properly that they had taken over as servicing agents on the mortgage loans and demanded payments from Plaintiffs in amounts substantially higher than owed on the loans serviced by the Snyder Entities.

The Complaint asserts three counts: Count I is for Declaratory Judgment Against All Defendants; Count II (pled in the alternative to Count I) is for Negligence Against All

---

[2] Plaintiffs also filed an additional amended complaint on November 14, 2007. According to Plaintiffs, that amended complaint "was filed . . . to correct a typo in the name of one of the Defendants." Pls.' Opp'n to Mots. to Dismiss at 25 n.15.

[3] Plaintiffs name the following defendants in the Second Amended Complaint: ABN AMRO Mortgage Group, Inc.; Chase Home Finance, LLC; Citimortgage, Inc.; Citicorp Home Mortgage Services, Inc.; Countrywide Home Loans, Inc.; Fifth Third Mortgage Company; Florida Capital Bank, N.A.; GMAC Mortgage Corporation; HSBC Mortgage Corporation (USA); IndyMac Bank, F.S.B.; MorEquity, Inc.; First Covenant (formerly known as nBank, NA); National City Mortgage, Inc.; Provident Funding Group, Inc.; The Provident Bank; Saxon Mortgage Services, Inc.; Sovereign Bank; SunTrust Mortgage, Inc.; U.S. Bank, N.A.; Wachovia Mortgage Corporation; Washington Mutual Home Loans, Inc.; Wells Fargo Home Mortgage, Inc.; and John Doe Companies.

Defendants; and Count III is for RESPA Violations Against All Defendants. Subsequent to filing their Second Amended Complaint, Plaintiffs voluntarily dismissed the action as to all named plaintiffs other than Douglas A. and Andrea M. Jones ("the Joneses") and entered into stipulations to dismiss seven (7) defendants.[4]

Pending before the court is Defendants' Consolidated Motion to Dismiss Plaintiffs' Second Amended Complaint (Docket No. 158), Defendant ABN AMRO's Joinder to the Consolidated Motion (Docket No. 160),[5] Plaintiffs' Omnibus Response in Opposition to Defendants' Motions to Dismiss (Docket No. 180), and Defendants Countrywide, MorEquity, SunTrust, Washington Mutual, and Wells Fargo's Reply Brief (Docket No. 188).

## II.     Factual Allegations

The Joneses allege that they applied for and closed on two separate Equity Slide Down mortgages through the Snyder Entities – one for each of their two properties – in 2002 and 2005, respectively. (2d Am. Compl. at ¶¶ 74-75, 80-81.) They allege that at all times after closing they remitted their monthly mortgage payments to the Snyder Entities and that they were current on all payments owed and had pre-paid a large portion of the principal balance through the Snyder entities by way of a large principal reduction payment made soon after closing. (Id. at ¶¶ 76, 78-79, 83-84.) They allege that in September 2007, after the bankruptcy filing of the Snyder Entities, they learned for the first time that SunTrust and Countrywide claimed to hold their respective mortgages and notes. (Id. at ¶¶ 77, 82.) They further allege that SunTrust and

---

[4] Defendants Citicorp Home Mortgage, Florida Capital, HSBC, MorEquity, National City, Sovereign Bank, and Wachovia were dismissed from this action.

[5] The Joinder was filed by Defendants ABN Amro, CitiMortgage, and Citicorp. CitiMortgage and Citicorp were subsequently dismissed as defendants to this action.

Countrywide demanded payment for amounts that were duplicative and excessive and that failed to credit properly the payments and pre-payments the Joneses had made to the Snyder Entities. (Id. at ¶¶ 77, 82, 86.)

Plaintiffs allege that the Snyder Entities were the "servicing agents" of each Defendant, as defined by the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 - 2617, (id. at ¶¶ 54, 58), and that the Snyder Entities were otherwise Defendants' agents under Pennsylvania agency law, (id. at ¶ 171). Specifically, Plaintiffs allege that each Defendant employed one or more of the Snyder Entities to originate, close, and service all the mortgage loans at issue, (id. at ¶ 55); that each Defendant knew Plaintiffs were making all mortgage payments to the Snyder Entities, (id. at ¶ 57); and that each Defendant knew it was sending all mortgage statements and federal tax forms to the Snyder Entities rather than to Plaintiffs, (id. at ¶ 56). Plaintiffs allege that the Defendants failed to monitor and supervise the Snyder Entities, and that the Defendants enabled an alleged Ponzi scheme of which they were victims. (Id. at ¶¶ 59, 66, 68.) Although Plaintiffs have alleged that the Snyder Entities engaged in a Ponzi scheme, they have not alleged fraud and, therefore, have not pled with specificity the various asserted causes of action.

### III.    Legal Standard for a Motion to Dismiss

Defendants filed their Consolidated Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), alleging Plaintiffs failed to state a claim upon which relief can be granted. Dismissal of a complaint pursuant to Rule 12(b)(6) is proper "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). The court must accept all of plaintiff's allegations as true and

draw all reasonable inferences therefrom. See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969) ("[T]he material allegations of complaint are taken as admitted."); Holder v. City of Allentown, 987 F.2d 188, 194 (3d Cir.1993) ("At all times in reviewing a motion to dismiss we must 'accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom.'" (quoting Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir.1990))).

"It is well-settled that in deciding a motion to dismiss, courts generally may consider only the allegations contained in the complaint, exhibits attached thereto, and matters of public record." Beverly Enterprises, Inc. v. Trump, 182 F.3d 183, 190 (3d Cir. 1999) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)). However, the Third Circuit has determined that "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document. Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." Pension Ben. Guar. Corp. v. White Consol. Inds., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (internal citations omitted). See also Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002) ("Documents that the defendant attaches to the motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim; as such, they may be considered by the court." (quoting 62 Fed. Proc., L.Ed. § 62:508)). "[C]onsidering such a document is not unfair to a plaintiff because, by relying on the document, the plaintiff is on notice that the document will be considered." Lum v. Bank of America, 361 F.3d 217, 222 (3d Cir. 2004).

In ruling on Defendants' Motion, this court will consider the Joneses' mortgage

agreements and Notes, which Defendants attached to their Motion to Dismiss. (See Defs.' Consol. Mot. to Dismiss Ex. 1-2, 9.) Plaintiffs reference these documents in their Complaint. (See 2d Am. Compl. §§ 74-84. See also Mem. in Supp. of Defs.' Consol. Mot. to Dismiss at 4 ("Plaintiffs do not specifically allege the respective terms of their 'Equity Slide Down' mortgages with the Snyder Companies although they do refer to these mortgages as 'bogus.' . . . Nor do Plaintiffs attach any loan documents relating to their 'Equity Slide Down' mortgages.").) Plaintiffs do not dispute the authenticity of the documents that are attached as exhibits to the motion.[6] Thus, the mortgage documents are properly considered as if they were attached to the Complaint.

## IV.    Defendants Not in Privity with the Joneses are Dismissed with Prejudice

The Joneses allege that their mortgages are currently held or have been held in the past by three defendants: Countrywide, SunTrust, and nBank. (2d Am. Compl. ¶¶ 77-78, 82-83). They do not allege, and cannot allege, that any of the other Defendants ever held, purchased, or were assigned their mortgages and Notes. They do not allege that any of the other Defendants contacted them, demanded payments from them, threatened to foreclose upon their mortgages, or indicated that they would issue negative credit reporting. Therefore, the court must conclude that Plaintiffs lack the requisite standing to sue all named Defendants other than Countrywide,

---

[6] On February 13, 2008, this court held a hearing during which Plaintiffs were required to show cause as to the basis for the accusation that Defendants filed fraudulent documents. (See Pls.' Opp'n to Mots. to Dismiss at 2 n.3 ("These acts are reflected in, among other things, numerous fraudulent and deceptive documents that several Defendants rely upon in their Rule 12 arguments and actually attach to their motion papers.").) At the hearing, Plaintiffs, through counsel, stated that they do not question the authenticity of the mortgage documents Defendants attached to their Motion to Dismiss. Rather, Plaintiffs claim they signed the mortgage documents in the context of a fraud.

Suntrust, and nBank.  For this reason, all Plaintiffs' claims against the remaining Defendants, other than Countrywide, Suntrust, and nBank, are dismissed with prejudice.

**V.     The Joneses' Claims against Countrywide, Suntrust, and nBank**

    **A.     Count I: Declaratory Judgment**

In Count I, captioned "Declaratory Judgment," Plaintiffs seek various types of declaratory relief, including declarations that

> i.   the Snyder Entities were the servicing agents for each of the Defendants through September 2007 with respect to each of the mortgage loans at issue (2d Am. Compl. ¶ 124);
>
> ii.  Plaintiffs and all members of the proposed class must be credited with all of their payments and pre-payments of interest and principal made on the mortgage loans at issue, whether such payments were sent to any of the Snyder entities or the Defendants directly (Id. at ¶ 125); and
>
> iii. all payments on any outstanding mortgage loan balances must be in the amount and for the term represented to the Plaintiffs and proposed Class members at the time that each loan was closed (Id. at ¶ 131).

(See also id. at ¶ 22.)  The pleading of Count I is facially deficient.  Declaratory judgment is a remedy, not a count.  Count I does not identify the source of the alleged rights for which Plaintiffs seek declaratory relief and therefore fails to state a claim upon which relief may be granted.  Count I is dismissed with prejudice as to Defendants Countrywide, Suntrust, and nBank.

    **B.     Count II: Negligence**

In Count II, pled in the alternative to Count I, Plaintiffs assert negligence against all Defendants.  Plaintiffs allege that Defendants "had the continuing duty to take reasonable steps to supervise the Snyder Entities to ensure that all payments and pre-payments of principal and

interest were properly credited against the mortgage loans at issue in this case." (Id. at ¶ 136.) This Count is based on Plaintiffs' allegation that the Snyder Entities were Defendants' loan servicers, as defined by RESPA, and were otherwise Defendants' agents.

Pennsylvania's "gist of the action" doctrine "is designed to maintain the conceptual distinction between breach of contract claims and tort claims. As a practical matter, the doctrine precludes plaintiffs from re-casting ordinary breach of contract claims into tort claims." eToll, Inc. v. Elias/Savion Advertising, Inc., 811 A.2d 10, 14 (Pa. Super. 2002) (quoting Bash v. Bell Tel. Co., 601 A.2d 825, 829 (Pa. Super. 1992) (overruled on other grounds)). As the Pennsylvania Superior Court has explained, "[A]lthough they derive from a common origin, distinct differences between civil actions for tort and contract breach have developed at common law. Tort actions lie for breaches of duties imposed by law as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual consensus agreements between particular individuals. . . . To permit a promisee to sue his promisor in tort for breaches of contract inter se would erode the usual rules of contractual recovery and inject confusion into our well-settled forms of actions. Thus, although mere non-performance of a contract does not constitute a fraud, it is possible that a breach of contract also gives rise to an actionable tort. To be construed as in tort, however, the wrong ascribed to defendant must be the gist of the action, the contract being collateral. The important difference between contract and tort actions is that the latter lie from the breach of duties imposed as a matter of social policy while the former lie for the breach of duties imposed by mutual consensus." Id. (citations omitted).

Pennsylvania courts provide specific instruction for applying the gist of the action doctrine to claims involving contracts. The doctrine "acts to foreclose tort claims: 1) arising

solely from the contractual relationship between the parties; 2) when the alleged duties breached were grounded in the contract itself; 3) where any liability stems from the contract; and 4) when the tort claim essentially duplicates the breach of contract claim or where the success of the tort claim is dependent on the success of the breach of contract claim." Reardon v. Allegheny College, 926 A.2d 477, 486 (Pa. Super. 2007) (citing Hart v. Arnold, 884 A.2d 316, 340 (Pa. Super. 2005)).

Count II of Plaintiffs' Complaint is clearly premised on either an alleged RESPA violation or an alleged breach of contract – namely, breach of the mortgage agreement. (See 2d Am. Compl. ¶ 137 ("Defendants were dutibound [sic] to supervise their servicing agents to ensure that the mortgages were marked satisfied when the borrowers had paid in full.").) Plaintiffs assert their RESPA claims in a separate count, Count III. However, they may not assert as a tort a right that has been created by the RESPA statute and that is premised on a mortgage contract. RESPA specifies remedies that do not include general tort.

In Bash, the Pennsylvania Superior Court specifically addressed whether claims involving contracts should be raised as tort actions or contract actions.

> [The Bash] court held that a plaintiff's negligence claim was barred under the gist of the action doctrine. In that case, the plaintiff entered into a contract with Bell Telephone Company to place a listing and an advertisement for the plaintiff's business in the local Yellow Pages. The plaintiff alleged that Bell breached the contract and acted negligently by failing to place the plaintiff's information in the Yellow Pages. [The] Court dismissed the negligence claim, reasoning that the obligations of the parties were defined by the terms of the contract, not by the law of torts.

eToll, 811 A.2d at 16, n.6 (citing Bash, 601 A.2d at 830). Here, as in Bash, the obligations of the

parties are defined by the terms of the contract or contracts[7] – not by the law of torts. Count II is dismissed with prejudice.

### C.  Count III: RESPA Violations

In Count III, Plaintiffs assert RESPA violations against Defendants. They allege Defendants have violated RESPA by, inter alia,

>   a.  Failing to provide the notice required when the servicing of the mortgage loans at issue was transferred;
>
>   b.  Failing to credit the Plaintiffs . . . with timely payments received by the Snyder Entities in the period immediately preceding and following the transfer of servicing;
>
>   c.  Failing to respond to "qualified written requests" for information about the loans from Plaintiffs and to make appropriate corrections in the accounts of the borrowers for, among other things, improperly imposed late charges and penalties; and
>
>   d.  Reporting delinquencies to consumer reporting agencies in violation of 12 U.S.C. § 2605(e)(3).

(2d Am. Compl. ¶ 175.)

### 1.  There is No Plausible Allegation that The Snyder Entities Serviced Plaintiffs' Loans from Defendants

All of Plaintiffs' RESPA claims stem from the portion of the statute that refers to loan servicers. These claims are based on the allegation that the servicing of each of Plaintiffs'

---

[7] The parties dispute the number of contracts Plaintiffs entered. Defendants argue that Plaintiffs's Complaint "deliberately confuses Defendants' loans with Plaintiffs' separate, subsequent transactions with the Snyder Companies." (Mem. in Supp. of Defs.' Consol. Mot. to Dismiss at 2.) Plaintiffs allege that "only one 'integrated mortgage transaction' existed and that no bona fide second loan was ever made by the Snyder Entities. . . ." (Pls.' Omnibus Resp. in Opp'n to Defs.' Mots. to Dismiss at 5.) For purposes of the motion to dismiss, the court accepts Plaintiffs' allegation that there was one contract for each of the two properties purchased or refinanced by the Joneses.

mortgages was transferred on two occasions: once immediately after closing and once upon bankruptcy of the Snyder Entities. With each mortgage, the first alleged transfer was from the Note holder to a Snyder Entity, and the second alleged transfer was from the Snyder Entity back to a Defendant Note holder. (See 2d Am. Compl. ¶ 54 ("[the Snyder Entities] were the servicing agents and loan originators for each Defendant"); id. at ¶ 63 ("Immediately after closing, the Snyder Entities serviced the loans, with the full knowledge, consent, and/or acquiescence of the Defendants."); id. at ¶ 70 ("Following the bankruptcy filings, the Defendants emerged from behind the curtain, for the first time making direct demand for immediate payments. . . . The Defendants failed to properly notify the Plaintiffs that they had taken over as servicing agent on the loans. . . .").)

When the servicing of a mortgage loan is transferred, RESPA requires the transferee servicer to notify the borrower of the transfer within a statutorily mandated period of time. 12 U.SC. § 2506©. RESPA also requires transferee servicers to refrain from reporting delinquencies to consumer reporting agencies within a certain period of time. 12 U.S.C. § 2605(e)(3).

RESPA defines a loan "servicer" as the person responsible for "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. §§ 2605(i)(2) - 2605(i)(3) (emphasis added). The language of the statute establishes that the terms of the loan document controls designation of the loan servicing entity. Here, Plaintiffs have not pled that the terms of the original mortgage documents signed with Defendants were specifically

amended and modified by any subsequent written loan document. Changes to the original mortgage documents are effective only if accomplished in strict accordance with the terms thereof.

"Where there is a disparity between a written instrument annexed to a pleading and an allegation in the pleading based thereon, the written instrument will control." ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 n.8 (3d Cir. 1994) (citation omitted).

The Note for the Joneses' 2005 mortgage unequivocally reads that payments are to be made to the Joneses' original lender, nBank. (See Defs.' Consol. Mot. to Dismiss Ex. 1 at ¶ 3(A)) ("I will make my monthly payments at nBank N.A., P.O. Box 1175, Commerce, Ga. 30529 or at a different place if required by the Note Holder.").)[8]

Likewise, under the unequivocal terms of the Note accompanying the Joneses' 2002 mortgage, payments are specified to be made to the lender, SunTrust. (See Defs.' Consol. Mot. to Dismiss Ex. 9 at ¶ 3(A))  ("I will make my monthly payments at SunTrust Mortgage, Inc., P.O. Box 79041, Baltimore, MD 21279-0041 or at a different place if required by the Note Holder.").)

Although Plaintiffs allege that "it is undeniable that the Defendants employed the Snyder Entities as their servicing agents for the subject mortgage loans," (2d Am. Compl. ¶ 129), the terms of each above cited original mortgage document with Defendants are totally inconsistent with that allegation. Plaintiffs' mortgage documents demonstrate that Countrywide and nBank were the designated loan servicers at the time Plaintiffs closed on these mortgages. Although

---

[8] Plaintiffs allege that Countrywide later acquired their loan from nBank (2d Am. Compl. ¶ 82), which ostensibly would have made Countrywide the entity responsible for receiving payments pursuant to the terms of the loan.

this does not foreclose the possibility that mortgage servicing duties were reassigned at a later time, <u>such a reassignment would have to be in writing – as a signed, executed amendment to the mortgage Note – in order to be valid under RESPA</u>.  Plaintiffs have not attached to their Complaint or to their Opposition to Defendants' Motion to Dismiss any amended loan documents.  Moreover, Plaintiffs do not allege that their loan documents were amended in writing to reassign servicing responsibilities from the Note holder to any other person or entity.  There is clearly a disparity between the relevant written instruments and Plaintiff's allegations, and, as per Third Circuit law, the written instruments control.  There being no well pled allegation that the Snyder Entities were authorized, by written amendment to mortgage documents, to service Plaintiffs' loans, Plaintiffs' claims of notice violations fail as a matter of law and fact.[9]

### 2. There is No Evidence that The Snyder Entities were Otherwise Defendants' Agents

Plaintiffs also allege that the Snyder Entities had actual or apparent authority to act on Defendants' behalf.  This allegation seems to be separate from the RESPA servicer allegation. (2d Am. Compl. ¶¶ 170-71 ("the Snyder Entities were servicers of the mortgage loans at issue, as that term is defined in RESPA.  In addition, the Snyder Entities acted as agents of the Defendants under common law agency principles embraced by the Commonwealth of Pennsylvania.").) Although it is unclear to the court how a claim of agency fits within the three counts of Plaintiffs'

---

[9] Furthermore, Plaintiffs do not properly plead causation and damages to support their RESPA claims.  Although Plaintiffs' RESPA count includes a demand for "actual damages and such additional damages as permitted under RESPA," (2d Am. Compl. at ¶ 177), they do not allege any specific damage they suffered as the result of the alleged RESPA violations and they do not allege a causal link between the alleged violations and the alleged damages.

Complaint, the court nevertheless addresses the agency allegations.

Plaintiffs have attempted to use Pennsylvania's agency law to try to overcome the clear RESPA requirement that a servicer must be designated in a loan document. In their Opposition to the motion to dismiss, Plaintiffs state,

> Defendants also argue that, under the terms of their Notes, the borrowers were responsible to pay the lenders. . . .  While the Defendants contend that the loan documents are controlling in this regard, the Court may only rely on such documents to the extent that Plaintiffs' claims are based on those documents.  Here, Plaintiffs claims are based on extra-contractual conduct – the Snyder Entities' conduct as servicers of Defendants' loans, and Defendants' conduct in allowing them to do so – not the documents themselves.  Defendants' argument, based solely on loan documents, is illogical and inconsistent with the obligation of this Court to consider only the allegations of the Complaint in deciding Defendants' motions to dismiss.

(Pls.' Opp'n to Mots. to Dismiss at 7-8 (citations omitted).)  As with the RESPA allegation, Plaintiffs have not plead sufficient allegations to support a prima facie case of common law agency.

"The law is clear in Pennsylvania that the three basic elements of agency are: the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking and the understanding of the parties that the principal is to be in control of the undertaking." Basile v. H & R Block, Inc., 761 A.2d 1115, 1120 (2000) (citations and internal quotations omitted).  An agency relationship may be established by the grant of either actual or apparent authority.  "[E]xpress authority can only exist where the principal specifically grants the agent the authority to perform a certain task on the principal's behalf." Reutzel v. Douglas, 870 A.2d 787, 790 (Pa. 2005) (citing Restatement (Second) of Agency § 7 cmt. c (1958)).

"Pennsylvania courts define apparent authority as that authority which, although not actually granted, the principal knowingly permits the agent to exercise, or holds him out as possessing. . . Apparent authority can exist only to the extent that it is reasonable for the third party dealing with the agent to believe the agent is authorized." D&G Equip. Co., Inc. v. First Nat'l Bank of Greencastle, 764 F.2d 950, 954 (3d Cir. 1985) (citations omitted).

Plaintiffs have made no plausible allegation that the Snyder Entities had either actual or apparent authority to perform duties on the Defendants' behalf.  Although Plaintiffs do allege that "[e]ach Defendant in this case employed one or more of the Snyder Entities to originate, close and service the mortgage loans at issue in this case," (2d Am. Compl. ¶ 55), they fail to support this claim with facts or documentation that would trigger RESPA consideration.  Any assignment of servicing duties must meet the RESPA requirements, as discussed above.  RESPA servicing requirements – particularly the requirements that servicing duties be delegated within the terms of the loan documents – are totally inconsistent with the concept of apparent authority. In addition, now that the original mortgage document exists in the record, and that document is absolutely contrary to the allegation that the Snyder Entities acted as agents for Defendants on their mortgages.  Plaintiffs' agency claims fail.

### 3. Plaintiffs Have Not Made a Prima Facie Case for a Violation of RESPA's Qualified Written Request Provisions

RESPA requires mortgage loan servicers who receive a "qualified written request" ("QWR") for action or information from a borrower to respond and, if necessary, to act within statutorily-mandated periods of time.  12 U.S.C. § 2605(e)(1) - 2605(e)(2).  RESPA defines a QWR as follows:

> [A] written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that –
>
> (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
>
> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B). Plaintiffs allege that the Lenders violated this provision, (2d Am. Compl.¶ 175©), but they fail to allege any facts to support the claim. Plaintiffs do not specifically allege that they sent any written correspondence to any Defendant or that any correspondence met the requirements of a RESPA QWR. See Scocca v. Cendant Mortg. Corp., 2004 WL 2536837 at *3 (E.D.Pa. Nov. 9, 2004) (dismissing a RESPA QWR claim in part because "[i]n his amended complaint, plaintiff never claims that he sent defendant a qualified written request. . . ."); Parker v. Long Beach Mortgage Co., 2006 WL 2868982 at *3 (E.D. Pa. Oct. 3, 2006) ("The complaint does not allege that Plaintiffs ever sent [a QWR] to either HSBC or OCWEN."). Furthermore, Plaintiffs could not state a claim for relief because RESPA provides a servicer sixty (60) days after the receipt of a QWR, excluding weekends and public holidays, to respond to the borrower's inquiry. 12 U.S.C. § 2605(e)(2). Since Plaintiffs claim that the Defendants assumed the servicing of their loans "upon commencement" of the bankruptcy proceedings filed by the Snyder Companies, (2d Am. Compl. ¶¶ 77, 82, 172), and that they had no contact with the Defendants before then, (id.), any QWR they sent would not have required a final response until December 14, 2007 at the earliest. The response deadline had not passed when Plaintiffs filed their Complaint on November 9, 2007. The QWR claim

fails as a matter of law and fact.

## VI.     Plaintiffs' Request for Leave to Amend their Complaint

Plaintiffs have requested leave to amend their Complaint in the event that the court dismisses the claims therein.  According to the Third Circuit, "[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile."  Phillips v. County of Allegheny, 515 F.3d 224, 245 (3d Cir. 2008) (citing Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004)).  The United States Supreme Court has given further guidance:

> Rule 15(a) declares that leave to amend "shall be freely given when justice so requires." . . .  If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.  In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be "freely given."  Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and

inconsistent with the spirit of the Federal Rules.

Foman v. Davis, 371 U.S. 178, 182 (1962).

The court concludes that an amendment to Plaintiffs' Complaint would be both futile and inequitable. Plaintiffs have already amended their complaint twice. The court finds no indication that repleading would correct the defects in their claims. Repleading would, however, unduly inconvenience Defendants, who state that they "have been forced to expend considerable resources over several months demonstrating that Plaintiffs' two previous legal theories seeking to hold them liable are untenable." (Defs.' Reply in Supp. of Consol. Mot. to Dismiss at 17.) Plaintiffs' request for leave to amend their Complaint is denied.

## VII.   Conclusion

For the foregoing reasons, all counts of the above-captioned matter are dismissed with prejudice as to all Defendants. This court retains equity jurisdiction over all dismissed Defendants in order to monitor disbursement, under Order of this court, of funds escrowed .

An appropriate Order follows.